UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSH LIEBERMAN, et al.,

                           Plaintiffs,

          v.

CITY OF ROCHESTER, et al.,

                       Defendants.

_____

<u>DECISION & ORDER</u>

07-CV-6316L

## <u>PRELIMINARY STATEMENT</u>

By order dated August 20, 2007, the above-captioned matter has been referred to the undersigned for the supervision of pretrial discovery and the hearing and disposition of all non-dispositive motions, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B). (Docket # 7).

This case arises out of an alleged "gay-bashing" incident and the response thereto by various officers of the Rochester Police Department ("the Incident") that took place on June 1, 2007 in the area of South Goodman and Harvard Streets in the City of Rochester. On June 26, 2007, plaintiffs filed this action against the City of Rochester (the "City") and the following members of the Rochester Police Department ("RPD"): Chief David Moore, Sergeant Shaw, Lieutenant Ward, and Officers Tortora, MacFall and Yodice. (Docket # 1). Their complaint asserts constitutional claims under 42 U.S.C. § 1983, as well as common law claims for assault and battery, intentional infliction of emotional distress and negligent infliction of emotional harm. (Docket # 21 (the "Complaint")). Plaintiffs also seek punitive damages. (*Id*.). All defendants are currently represented by the City's Corporation Counsel ("Corporation Counsel").

Following the Incident, RPD's Professional Standards Sections commenced an internal investigation of the conduct of defendants Lieutenant Ward and Officers Tortora, MacFall and Yodice (collectively, "the Officers") during the Incident. (Docket # 26-2 at ¶ 4). Based on that investigation, each of the Officers was charged with violations of several RPD rules and regulations. (*Id.*). Each was also suspended from work for a period of time. (Docket # 26-3 at ¶¶ 15-21, 26). At the time this motion was argued, the charges were still pending.

On March 9, 2009, the Officers, represented by private counsel, filed a civil complaint in federal court against the City and several individual RPD officers, including Chief Moore.[1] (Docket # 26-4). The complaint asserts due process and First Amendment violations under 42 U.S.C. § 1983, as well as claims for defamation and intentional and negligent infliction of emotional distress, in connection with RPD's internal investigation of the Incident. (*Id.*).

Currently pending before this Court is a motion brought by the Officers to disqualify Corporation Counsel from representing them in this action. (Docket # 26). Specifically, the Officers contend that Corporation Counsel suffers from a conflict of interest arising from the City's roles in the three separate proceedings – this civil action, the Officers' civil action and the disciplinary proceedings. (Docket # 26-2 at ¶¶ 5-7). The Officers are represented on this motion by the same attorney who represents them in their Section 1983 action against the City.

---

[1] The case, captioned *MacFall v. City of Rochester*, is pending in this district court and bears docket number 09-CV-6113.

2

Although the circumstances presented through this motion appear unusual and raise issues that require careful attention and consideration, I conclude that disqualification of Corporation Counsel is not warranted at this time.

## FACTUAL BACKGROUND

### I. Plaintiffs' Lawsuit Against the Officers

According to the Complaint, plaintiffs were walking home in the early hours of June 1, 2007, near South Goodman and Harvard Streets in the City of Rochester, when a group of four individuals exited a cab and began shouting anti-gay epithets at them. (Docket # 21 at ¶¶ 21-23). Plaintiffs allege that the group then attacked them by kicking, punching and beating them with a metal pipe. (*Id*. at ¶ 24). Plaintiffs Herrick, Barrett and Terrance allege that they were injured by the beatings. (*Id*. at ¶¶ 24, 28). After a flurry of telephone calls, including to 911, plaintiffs left the scene of the confrontation and returned a short time later to find that their attackers were still present and that RPD officers had arrived. (*Id*. at ¶¶ 28-31).

According to plaintiffs, Officers Tortora and MacFall took no action against the perpetrators and refused to address their complaints that they had been attacked because of their perceived sexual orientation. (*Id*. at ¶ 33). According to plaintiffs, the officers instead directed them to go home or face arrest. (*Id*. at ¶¶ 33-37). Plaintiff Terrance further alleges that when he persisted in asking the police to file a complaint against the attackers, Officer MacFall made derogatory comments about his perceived sexual orientation and then assaulted him. (*Id*. at ¶¶ 38-43). Plaintiff Lieberman also alleges that a police officer assaulted him and used similar derogatory epithets. (*Id*. at ¶¶ 50-52). Lieberman was charged with three counts of disorderly

conduct, taken to jail and released on bail a short time later. (*Id*. at ¶ 59). Terrance was also taken into custody and subsequently released on charges of failure to disperse. (*Id*. at ¶ 60).

Each of the plaintiffs in this action has asserted claims against the Officers and Sergeant Shaw for violations of the Equal Protection Clause under 42 U.S.C. § 1983, for common law torts of intentional and negligent infliction of emotional harm, and for punitive damages. (*Id*. at ¶¶ 61-237). In addition to those claims, plaintiffs Terrance and Lieberman have asserted claims against the Officers and Shaw for excessive use of force under 42 U.S.C. § 1983 and for common law torts of assault and battery. (*Id*.). Chief Moore is a named defendant only in the Section 1983 equal protection claims. (*Id*.). The City is a named defendant in Section 1983 claims brought under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), as well as in the equal protection claims. (*Id*.).

## II.  The Officers' Lawsuit Against the City

Following the Incident, RPD's Professional Standards Section ("PSS") commenced an investigation of the Officers' conduct during the Incident. (Docket # 26-4 at ¶ 39). Days later, the RPD also initiated an internal criminal investigation of the Officers' actions. (*Id*. at ¶ 41). The criminal investigation apparently concluded on October 18, 2007, with a determination by a Monroe County grand jury that no criminal charges against the Officers were warranted. (*Id*. at ¶ 88).

At the conclusion of the PSS investigation on September 14, 2007, each of the Officers was charged with disciplinary violations and suspended from work with pay. (*Id*. at ¶¶ 80-83). Specifically, Officers MacFall, Tortora and Yodice were charged with use of profane

and/or discourteous remarks, failure to prepare reports[2] and violation of truthfulness. (*Id*. at ¶¶ 80, 81, 83). Lieutenant Ward was charged with use of profane and/or discourteous remarks, failure to prepare reports and failure to supervise.[3] (*Id*. at ¶ 82). Each of the Officers pleaded not guilty. (*Id*. at ¶¶ 89-92). In accordance with Section 75 of the New York Civil Service Law, a hearing is required to be held on the disciplinary charges (the "Article 75 proceeding"), after which the hearing officer must make a recommendation whether the charges should be sustained.[4] (Docket # 29 at ¶ 13). RPD, through the Chief of Police, will then determine whether to accept or reject the recommendation of the hearing officer.

In April 2008, the Officers' suspensions ended and they were permitted to return to work. (Docket # 26-4 at ¶ 95).

In September 2008, the Officers served the City with a notice of claim pursuant to N.Y. Gen. Mun. Law § 50-e. (Docket # 26-2 at ¶ 6). On March 9, 2009, the Officers filed their federal Section 1983 complaint against the City, Chief Moore and various other RPD officers and officials. (Docket # 26-4). In the complaint, the Officers allege that the City's investigation and the disciplinary charges instituted against them were politically motivated in order to get the "gay vote" following criticism in the media of the Officers' conduct during the Incident. (*Id*. at ¶¶ 40,

---

[2]  The complaint alleges that each of the Officers was charged with "failure to prepare a CR." (Docket # 26-4 at ¶¶ 80-83). Neither the complaint nor the parties in this action have defined the abbreviation "CR," although the Court assumes that it refers to a written report that each officer was required to prepare.

[3]  The Officers' complaint alleges that each of the Officers received four disciplinary charges, but the complaint identifies only three charges lodged against each. (Docket # 26-4 at ¶¶ 80-83). The Court has not been provided with the charging documents or any records relating to the PSS investigation, and the record is thus unclear whether the fourth charge was a second count of one of the above-mentioned charges or a new charge.

[4]  At the time of oral argument, the Article 75 hearing had not yet been held. This Court has not been notified whether a hearing has since taken place and, if so, the hearing officer's recommendation or RPD's determination whether to accept or reject that determination.

70-71).  The Officers allege that the PSS was intent to charge them with misconduct and deliberately ignored exculpatory evidence in reaching its decision to lodge charges.  (*Id*. at ¶¶ 64-66).  The Officers' causes of action include Section 1983 claims based on violations of the Due Process Clause and the First Amendment, as well as common law claims of defamation and intentional and negligent infliction of emotional distress.  (*Id*. at ¶¶ 113-152).

## III.  <u>The Pending Motion</u>

### A.  <u>Relevant Background</u>

The City's Charter requires it to defend and indemnify any City employee who is sued for compensatory damages based upon acts or omissions that occurred "while the employee was exercising or performing . . . his or her powers and duties within the scope of his or her public employment."  (Docket # 29-2 at §§ 2-23(C) and (E)).  The City is further required to indemnify employees for punitive damages provided that the employee was "*properly* discharging his or her powers and duties within the scope of his or her employment, as determined by the Corporation Counsel."  (*Id.* at § 2-23(E) (emphasis added)).  In the event that Corporation Counsel determines that "an actual conflict of interest exists" in the representation of an employee, the Charter provides that the City employee may retain private counsel at the City's expense.  (*Id.* at § 2-23(D)).

The Collective Bargaining Agreement ("CBA") between the City and the Rochester Police Locust Club, the police union, provides that the City shall indemnify a police officer for any judgment "provided that the act or omission occurred while the police officer was exercising or performing or in good faith purporting to exercise or perform his powers and

duties."  (Docket # 29-4, Art. 30 § 8D).  The CBA does not require indemnification where the damage award "resulted from intentional wrongdoing on the part of the police officer."  (*Id.*).  The CBA contains a provision similar to the Charter for a police officer to retain private counsel at City expense where Corporation Counsel is conflicted from representing the officer.  (*Id.* at Art. 30 § 8C).

After plaintiffs filed the instant suit, Corporation Counsel determined that the Officers were acting within the scope of their employment during the Incident and undertook to defend and indemnify them, including against the claim for punitive damages.  (Docket # 29 at ¶ 11 ("Rochester's Corporation Counsel determined that the Officers were acting within the scope of their employment as Rochester Police Officers during the incident in question and therefore are entitled to defense and indemnification, including indemnification of any potential punitive damages (assuming full cooperation by the officers in the defense of this action)")).  Under the Charter, defense and indemnification is conditioned upon the employee's full cooperation in the defense of the action.  (Docket # 29-2 at § 2-23(G)).  The Charter further provides that the City's Corporation Counsel shall have "complete charge of the defense" and "sole authority to defend or settle any action."  (*Id*. at § 2-23(I)).

On July 23, 2008, after disciplinary charges were instituted against the Officers, but before they filed suit against the City, the City retained an outside law firm to represent it in the Article 75 proceeding against the Officers.  (*Id*. at ¶ 16; Docket # 29-5).  Thus, Corporation Counsel does not and will not represent the City in the Article 75 proceeding.

### B. **The Instant Motion**

Following unsuccessful attempts to persuade the City to hire outside counsel to defend them in this action, the Officers filed the pending motion to disqualify Corporation Counsel from representing them in this lawsuit. (Docket # 26). Specifically, the Officers contend that a conflict of interest exists that entitles them to retain private counsel at the City's expense. (Docket # 32 at ¶¶ 16-17). The City opposes the motion, while plaintiffs do not. (Docket ## 29, 30).

Although the City declined to retain outside counsel for the Officers in this action, Corporation Counsel represented that the City plans to hire outside counsel to defend the City against the Officers' civil lawsuit. (Docket # 29 at ¶ 20). Indeed, a review of the docket in that action reveals that after this motion was argued, the same firm that represents the City in the Article 75 proceeding appeared as counsel of record for the City in that case. *See MacFall v. City of Rochester*, No. 09-CV-6113 (W.D.N.Y. 2009).

### DISCUSSION

It is well-settled that a lawyer's duty to his client is that of a fiduciary or trustee. *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976) (citing *Hafter v. Farkas*, 498 F.2d 587, 589 (2d Cir. 1974)). The client is entitled to trust that, at least until the pending litigation concludes, he has his counsel's undivided loyalty as an "advocate and champion" and may "rely upon his undivided allegiance and faithful, devoted service." *Id.* (citations and internal quotation omitted).

Similarly, Disciplinary Rule ("DR") 5-105(A) of the American Bar Association's Code of Professional Responsibility provides:

> A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing different interests, except to the extent permitted under DR 5-105(C).

DR 5-105(A).  DR 5-105(C) permits multiple representation provided there is full disclosure and all interests can be adequately represented.[5]  *See* DR 5-105(C) ("[a] lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each").  On this issue, the Code's Ethical Considerations ("EC") caution that "[a] lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which the lawyer would be justified in representing in litigation multiple clients with potentially differing interests."  EC 5-15.

The Second Circuit has declined to adopt any "single representation" rule requiring independent representation in all cases involving actual or potential conflicts between multiple clients.  *In re Taylor*, 567 F.2d 1183, 1191 (2d Cir. 1977).  Rather, the court is charged with ensuring that each client is fully aware of any conflict and its potential impact upon his or her interests and nonetheless desires to proceed with joint representation.  *Id.*  Once that

---

[5]  Rule 1.7 of the New York Rules of Professional Conduct contains provisions that do not differ in material respects from DR 5-105.  Pursuant to Rule 83.3(f) of this Court's Local Rules, attorneys practicing in this Court are bound to adhere to the New York Rules of Professional Conduct.

assurance is adequately provided, the court may not interfere with or obstruct a party's knowing choice of counsel. *Id.*

In the case at bar, the Officers seek to disqualify their own counsel. Thus, it presumably would be of little utility for this Court to inquire of the Officers their position on joint representation.[6] The Court further assumes that the Officers could hire private counsel at their own expense, if they so choose. With these assumptions in mind, the question presented by this motion is whether the City should be compelled to hire independent counsel at its expense to represent the Officers because Corporation Counsel is legally disqualified from doing so.

Here, the Officers allege that Corporation Counsel suffers from an actual conflict of interest because of the differing interests between the City and the Officers that have been created by the various legal proceedings described above. Specifically, the Officers argue that the conflict arises because of and is manifest in the City's simultaneous defense of them in the plaintiffs' lawsuit, prosecution of the Officers in the Article 75 disciplinary proceeding and defense of itself in the Officers' lawsuit.

## A. Has a Conflict Arisen as a Result of Corporation Counsel's Joint Representation of the City and the Officers in this Lawsuit?

Disqualification of counsel "is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). Critical to the proper exercise of that discretion is the question whether the attorney suffers from an actual or potential conflict of interest. *See Coggins v. County of Nassau*, 615 F. Supp. 2d 11, 34 (E.D.N.Y. 2009) (denying without prejudice to renewal defendant's motion to disqualify the

---

[6] At oral argument, the Officers' counsel on this motion represented that the Officers do not consent to joint representation.

county attorney from representing him in light of the "possibility that a potential conflict of interest may arise").  "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and [the client's] interests diverge with respect to a material factual or legal issue or to a course of action."  *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002) (quoting *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993)).  In contrast, "[a] potential conflict of interest exists if the interests of the defendant may place the attorney under inconsistent duties at some time in the future."  *United States v. Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998).

Following the Supreme Court's decision in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), holding that a municipality may be held liable under 42 U.S.C. § 1983 for injuries caused by its employees taken pursuant to municipal policy, the Second Circuit has recognized that "the interests of a municipality and its employee as defendants in a section 1983 action are in conflict."  *Dunton v. County of Suffolk*, 729 F.2d 903, 907 (2d Cir.), *amended on other grounds*, 748 F.2d 69 (2d Cir. 1984).  As the court explained,

> A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy.  The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties.  If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality. If he is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it cannot assert the good faith immunity of its employees as a defense to a section 1983 action.

*Id*. (citation omitted).

In *Dunton*, the plaintiff filed a Section 1983 action against Suffolk County and a Suffolk County police officer who had physically assaulted a man whom the officer had found in a car with the officer's wife. *Id*. at 905. The Suffolk County Attorney represented both the county and the officer. *Id.* at 906. At trial, the county attorney argued that the officer's actions were those of a man acting as a husband, not as an officer, and that the officer thus had acted outside the scope of his employment. *Id*. The jury awarded compensatory and punitive damages against the officer. *Id.* On appeal, the Second Circuit held that the county attorney had created a serious and impermissible conflict of interest by making arguments that were directly contrary to the officer's interests, namely, that the officer "was not acting under color of state law but rather as an 'irate husband.'" *Id*. at 908. The Second Circuit declined to impose a *per se* rule mandating disqualification in cases of joint representation of a municipality and its employee in Section 1983 actions, *id*. at 908 n.4, preferring instead to employ "a case-by-case determination," *see Patterson v. Balsamico*, 440 F.3d 104, 114 (2d Cir. 2006). The court further counseled that "[w]here a conflict is serious and disqualification might be warranted, the district court is under a duty to ensure that the client fully appreciates his situation." *Dunton v. County of Suffolk*, 729 F.2d at 908.

District courts have interpreted *Dunton* to require disqualification of counsel representing both an individual officer and the municipal employer in Section 1983 cases only where counsel acts in a way that is *actually* against the officer's interests. *See*, *e.g.*, *Coggins v. County of Nassau*, 615 F. Supp. 2d at 33 (declining to disqualify county attorney because the county's and employee's interests were aligned as a result of county's determination that employee "acted within the proper discharge of [his] duties and within the scope of [his]

employment" and thus "any judgment against [the employee] will effectively be one against the [c]ounty"); *Weintraub v. Bd. of Educ. of the City Sch. Dist. of City of New York*, 2001 WL 984933, *2-3 (E.D.N.Y. 2001) (refusing to disqualify counsel, but choosing to advise employee of possible conflict in view of corporation counsel's inconsistent statements concerning whether it had conclusively determined that defendant had been acting within the scope of his employment). In other words, a potential conflict is insufficient to warrant disqualification; rather, the employee must show that an actual conflict exists.

Further, in the absence of a showing of actual prejudice to the employee, the Second Circuit has declined to disturb jury verdicts against municipal employees in Section 1983 actions where the employee was jointly represented with the municipality. *See, e.g.*, *Patterson v. Balsamico*, 440 F.3d at 115-16 (employee did not "make the required showing of a sufficiently serious actual conflict of interest" because the county attorney "neither advanced an argument contrary to [the employee's] interest, such as that [the employee] was acting outside the scope of his employment, nor failed to present a valid defense for reasons of loyalty to [the county]"); *Leather v. Ten Eyck*, 2 F. App'x 145, 148 (2d Cir.) (affirming verdict despite multiple representation; noting that "a necessary [but missing] element of the conflict of interest claim the individual defendants present is that 'counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance'") (quoting *Gordon v. Norman*, 788 F.2d 1194, 1198 (6th Cir. 1986)), *cert. denied*, 533 U.S. 941 (2001); *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (disqualification not necessary where city attorney had argued that "officers were acting in their official capacity" and had "advanced and argued all possible defenses available to the officers, including the qualified immunity defense").

These post-*Dunton* decisions refute any suggestion by the Officers that *Dunton* stands for the proposition that joint representation of a municipality and its employee is prohibited in all Section 1983 cases. *See Patterson*, 440 F.3d at 114 ("[i]n [*Dunton*], we noted that the *potential* for such a conflict is inherent in Section 1983 cases") (emphasis added).

In the case at bar, Corporation Counsel's answer filed on behalf of all of the defendants asserts eighteen affirmative defenses, some of which are asserted on behalf of all the defendants, some of which are asserted on behalf of the City alone and some of which are asserted on behalf of the individual defendants alone, such as, that they are entitled to qualified immunity and that they were acting "in an official capacity." (Docket # 22). The answer also asserts that the City is the "real party in interest" because the Officers are being sued for actions taken within the scope of their employment. (*Id.* at ¶ 37). In its response to this motion, counsel affirmed that Corporation Counsel has "determined that the Officers were acting within the scope of their employment as Rochester Police Officers during the incident in question and therefore are entitled to defense and indemnification, including indemnification of any potential punitive damages."[7] (Docket # 29 at ¶ 11). In other words, Corporation Counsel perceives no conflict of interest, or even potential for one, because "the City will be liable for any and all damages that may be awarded, even if awarded against the individual officers." (*Id.* at ¶ 27). Corporation Counsel reaffirmed the City's position on the record at oral argument of this motion and

_____

[7] Although counsel's affirmation did not directly state that Corporation Counsel had determined that the Officers had "properly" discharged their duties within the scope of their employment, which is a prerequisite to indemnification for punitive damages under the City's Charter, it is only reasonable to assume that such a determination has been made in view of counsel's unequivocal representation that the City will indemnify the Officers for any punitive damage award against them. Corporation Counsel is directed to notify this Court in writing no later than one week from the entry of this decision and order in the event that such a determination has not been made.

14

indicated his willingness to stipulate to that position. Considering these unequivocal representations, the City's and the Officers' interests appear aligned at this stage of the litigation.

The Officers argue that Corporation Counsel's statement that the City is the real party in interest betrays counsel's view that "the Officer clients are not really entitled to meaningfully participate" in the defense of the case. (Docket # 32 at ¶ 7). I do not agree that this statement is properly read to imply an abandonment by Corporation Counsel of his ethical obligations to his other clients, the Officers, rather than to acknowledge that the City will shoulder any damage award because it has determined that the Officers acted within the scope of their official duties. The Officers do allege, however, that several actions taken by Corporation Counsel prove that counsel is not vigorously defending them. For example, the Officers allege that counsel neither discussed the answer with the Officers prior to filing it, nor asserted any counterclaims on their behalf. (Docket # 26-2 at ¶¶ 15-16). The Officers further contend that counsel did not consult with the Officers before communicating a settlement offer to plaintiffs. (Docket # 32 at ¶¶ 9-14).

In response, Corporation Counsel maintains that neither the Charter nor the CBA obligates the City to provide legal counsel for counterclaims, which the employee may assert as a separate cause of action on a separate lawsuit,[8] and that counsel chose not to assert any because "counterclaims can interfere with potential resolution of the lawsuit." (Docket # 29 at ¶ 24).

---

[8] Counsel for Officer MacFall in this motion has represented that MacFall could have asserted a counterclaim for assault against plaintiff Terrance in this lawsuit. (Docket # 26-2 at ¶ 16). Under Federal Rule of Civil Procedure 13(a), such a claim would likely constitute a compulsory counterclaim. Fed. R. Civ. P. 13(a). New York law, by contrast, does not have a compulsory counterclaim rule. *See* N.Y. C.P.L.R. § 3019; *Eubanks v. Liberty Mortgage Banking Ltd.*, 976 F. Supp. 171, 173 (E.D.N.Y. 1997) ("New York . . . does not have any compulsory counterclaim rule"). MacFall was free to sue Terrance in state court and indeed has done just that. (Docket # 26-2 at ¶ 16).

Counsel also represents that he conducted a thorough review before filing the answer. (*Id.* at ¶ 22). At oral argument, Corporation Counsel further explained that the City's settlement offer did not envision any monetary contribution by the Officers or admission by them of wrongdoing (indeed, the offer contemplated releases in their favor) and, for those reasons, counsel did not advise the Officers of the offer.[9]

This decision does not address the question whether every action taken by Corporation Counsel in the defense of the Officers comports with counsel's ethical obligations, and it should not be read to suggest any opinion on that dispute. I am satisfied, however, based on Corporation Counsel's response to the Officers' allegations and on the record as a whole that the challenged actions do not reflect any abdication by Corporation Counsel of his ethical responsibilities to the Officers in favor of his responsibilities to the City. *Cf. Gordon v. Norman*, 788 F.2d at 1198 (defendants' complaints "regarding their attorney's conduct and effectiveness simply cannot be explained in terms of a conflict between their interests and the City's interests"). I am further satisfied that Corporation Counsel's representation of the Officers to date in this litigation does not give rise to any grounds for disqualification.

In sum, based on the record before me, I find that the Officers have failed to show that their interests actually conflict with those of the municipal co-defendant. Rather, at this stage in the litigation, the City has not distanced itself from the Officers in the defense of this

---

[9] DR 5-106 provides:

> A lawyer who represents two or more clients shall not make or participate in the making of an aggregate settlement of the claims of or against his clients, unless each client has consented to the settlement after being advised of the existence and nature of all the claims involved in the proposed settlement, of the total amount of the settlement, and of the participation of each person in the settlement.

action, but rather has affirmed that the Officers were acting within the scope of their employment. This fact, coupled with Corporation Counsel's representation that the City will indemnify the Officers for compensatory and punitive damages, distinguishes this case from *Dunton* and makes disqualification at this stage inappropriate. *See*, *e.g.*, *Patterson*, 440 F.3d at 115 ("The particular conflict cited in *Dunton* as inherent in Section 1983 actions against municipalities . . . is simply not present here. At no time did [counsel] assert that [the employee] was acting 'outside the scope of his employment'"); *Rodick v. City of Schenectady*, 1 F.3d at 1350 ("*Dunton* is distinguishable [because] both the City and the officers argued that the officers were acting in their official capacity"); *Coggins*, 615 F. Supp. 2d at 33 ("In fact, the interests of the County [and the county employees] appear to be aligned following the Board's . . . determination [that they acted] 'within the proper discharge of their duties and within the scope of their employment.' . . . Thus, any judgment against [the employee] will effectively be one against the County"). Although the possibility exists that Corporation Counsel's joint representation may present a potential conflict in the future,[10] I conclude that it would be

---

[10] At oral argument, this Court posited a scenario that in its view would pose a potential conflict. Three of the Officers have been charged with a "violation of truthfulness" in the PSS investigation. (Docket # 26-4 at ¶¶ 80, 81, 83). These pending charges raise the question whether, in the event that these charges of untruthfulness were sustained against them following the Article 75 hearing and accepted by RPD through the Chief of Police, Corporation Counsel would be ethically restrained from attempting to impugn those findings if plaintiffs' counsel sought to use them to impeach the officers' credibility.

Corporation Counsel has stated without equivocation that he would not be restrained from vigorously attacking any disciplinary finding that would negatively impact the City's interests in the litigation. (*See* Docket # 35). Because counsel views the City's interests as aligned with the officers' interests, the fact that the City will "bear the consequences" of any adverse judgment in this litigation provides it with the same incentive as the officers to attack the findings. (*Id*.). Corporation Counsel further contends that "the City often argues that results of disciplinary proceedings are inadmissible or irrelevant." (*Id*.).

The Court does not question the City's incentive to attack any such findings, if they were to be made. Rather, it questions Corporation Counsel's freedom, consistent with his ethical obligations and constraints, to attack the ultimate findings made by the RPD through the Chief of Police (another co-defendant in this case). That said, I am satisfied that on the facts presented on the record before me, such a hypothetical scenario should not be addressed

premature to disqualify counsel based simply upon a possibility that may not transpire. Therefore, I decline to disqualify Corporation Counsel upon those grounds.

### B.  Has a Conflict Arisen as a Result of the Prosecution of the Officers on Disciplinary Charges?

I turn to the Officers' argument that Corporation Counsel is conflicted from representing them as a result of RPD's pending disciplinary charges against the Officers.  The Officers argue that because RPD is a municipal department, then the City "stands in the role of prosecutor in the disciplinary proceedings against the Officers." (Docket # 26-2 at ¶ 5).  They further argue that the City's role as prosecutor directly conflicts with its role defending the Officers in this action.  (*Id.* at ¶ 8).

The City maintains that its roles in the two separate actions do not create a conflict of interest.  (Docket # 29 at ¶¶ 14-15).  As a general matter, the City points out that RPD often investigates and disciplines police officers for violations of RPD rules and regulations relating to incidents that result in civil litigation against the City.  (*Id*. at ¶ 14).  The City notes that if Corporation Counsel's defense in civil lawsuits of officers whom RPD disciplines poses a *per se* conflict warranting disqualification, then the City would be required to hire outside counsel in every such case at substantial expense to the City.  (*Id*. at ¶ 15).

Notwithstanding those concerns, in this matter the City has retained outside counsel to prosecute the Article 75 proceeding.  (*Id*. at ¶ 16).  Counsel in this case has represented that he has not communicated and will not communicate without outside counsel about this lawsuit or the Article 75 proceeding or disclose any privileged information learned

---

in this motion and does not justify withdrawal at this stage of the litigation.

from his clients.  (*Id*. at ¶¶ 17-18).  At oral argument, counsel for the Officers confirmed that the Officers are not concerned about, and this motion does not implicate, disclosure of privileged information or confidences.

I find that the City's decisions to hire outside counsel to prosecute the Article 75 proceeding and to prohibit communications by or on behalf of Corporation Counsel and outside counsel concerning the matters of their representation prevent any potential conflict from arising had Corporation Counsel represented the City in both actions.[11]

## C. Has a Conflict Arisen as a Result of the Officers' Section 1983 Action Against the City?

Finally, I address the question whether the unusual posture of the City as both a defendant in a Section 1983 action brought against it by the Officers and as a co-defendant with the Officers in this lawsuit creates a conflict justifying disqualification of Corporation Counsel as counsel for the Officers in this lawsuit.  The Officers argue that it does; the City disagrees.

Resolution of this dispute again turns on the fact that the City has hired outside counsel to defend the City in the Officers' suit.[12]  (Docket # 29 at ¶ 20).  Further, counsel has affirmed that it "will not share or cause to be shared any information with the attorney hired to represent [the City] in the Officers' lawsuit that [Corporation Counsel] learn[s] as a result of [ ] represent[ing the Officers] in this lawsuit or allow such information to be utilized in the defense of the [O]fficers' lawsuit."  (*Id*. at ¶ 21).  As with the previous issue, I conclude that the City's

---

[11]  This opinion does not address whether disqualification would have been warranted had the City not retained outside counsel.

[12]  The docket in the Officers' lawsuit reveals that the same law firm that represents the City in the Article 75 proceeding has appeared as counsel for all defendants, including the City, in the Officers' lawsuit.  *See MacFall v. City of Rochester*, No. 09-CV-6113 (W.D.N.Y. 2009).

retention of outside counsel to defend it in the Officers' civil suit permits Corporation Counsel to defend the Officers in this action without creating a potential conflict.[13]

The Officers contend that retention of outside counsel in one lawsuit only (the Officers' and not the plaintiffs') is insufficient to protect against "the distinct and significant possibility that issues litigated and testimony elicited at trial in this case will have *a preclusive effect or provide fodder for impeachment* in the Officers' subsequent litigation." (*See* Docket # 36) (emphasis in original). Of course, that possibility exists regardless of whether Corporation Counsel or another attorney represents the Officers in this action. Recognizing that, the Officers presumably are concerned that Corporation Counsel may purposefully elicit testimony during the trial of this matter for use by the City in its defense against the Officers' suit. In my judgment, such a scenario is too speculative to support disqualification of counsel at this time. Even if Corporation Counsel were to elicit testimony in this suit that could be used in the Officers' suit, the Officers have not shown that such theoretical testimony would likely be adverse to the Officers' interests in this lawsuit. *See Coggins*, 615 F. Supp. 2d at 31 ("the evidence is far from clear that [the] likely testimony conflicts . . . and that separate counsel . . . is either prudent or necessary at this juncture"). In fact, given Corporation Counsel's determination that the Officers were acting within the scope of their employment and will be indemnified by the City, that possibility seems unlikely.

---

[13] Again, this opinion does not address whether disqualification would have been warranted had the City not retained outside counsel to defend against the Officers' Section 1983 lawsuit.

## CONCLUSION

Although the City's and the Officers' involvement in three separate proceedings arising from the same incident appears unusual, any potential conflict arising from their roles in those proceedings has been adequately addressed by the City's retention of outside counsel to represent it in the Article 75 proceeding and the Officers' Section 1983 lawsuit. To require the City to retain outside counsel in a third action – this case – without a demonstrable showing that Corporation Counsel is laboring under an actual conflict would impose an even greater financial burden on the City that is not justified under controlling precedent.

My determination on the important and sensitive issues raised in this motion, however, does not exclude the possibility that circumstances may arise or change as this litigation proceeds that will necessitate revisiting those issues. For that reason, I deny the motion without prejudice to renewal. *See Coggins*, 615 F. Supp. 2d at 34 (disqualification motion denied without prejudice "[i]n light of the possibility that a potential conflict of interest may arise"). I further direct Corporation Counsel to advise this Court in writing as to the outcome of the Article 75 proceedings upon their conclusion.

It hardly bears repeating that a client's trust that his attorney is acting in his interests is integral to a successful attorney-client relationship. Considering the issues raised in this motion, both sides will need to communicate openly and fully in order to establish a productive relationship. The importance of that communication is implicit in the contractual obligation imposed by the City Charter and the CBA on the Officers to cooperate with Corporation Counsel in their defense and in the professional obligation imposed by applicable ethical rules on Corporation Counsel to represent vigorously the interests of all of his clients.

Corporation Counsel has assured this Court of his commitment to the vigorous defense of the Officers in this action. The Officers are entitled to rely on that assurance. If they believe that they cannot, they are of course free to retain counsel of their choosing at their own expense.

For the foregoing reasons, the Officers' motion to disqualify Corporation Counsel from representing them **(Docket # 26)** is **DENIED** at this time without prejudice to renewal.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
February __4__, 2010