UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSH LIEBERMAN,
MEGAN BARRETT,
CHRISTINE HERRICK,
DAVE GREENLAWN,
ALEXANDER TERRANCE,

                      Plaintiffs,

                                                                    <u>DECISION AND ORDER</u>

                                                                      07-CV-6316L

              v.

CITY OF ROCHESTER,
CHIEF OF POLICE DAVID T. MOORE,
In his Official and Individual Capacities,
OFFICER TORTORA         ,
In his Official and Individual Capacities,
OFFICER MAC FALL,
In his Official and Individual Capacities,
SERGEANT SHAW,
LIEUTENANT WARD,
OFFICER YODICE,

                      Defendants.
_____

       In the early morning hours of June 1, 2007, an incident occurred in the area of Goodman Street in Rochester, New York, involving an altercation between two groups of people. At some point, a number of police officers arrived on the scene, and a second altercation ensued between those officers and some members of one of those two groups. Three people ended up under arrest, and, eventually, three lawsuits ensued, all stemming from that incident.

       In this, one of those three lawsuits, five members of one of those groups of people have sued the City of Rochester ("City"), former police chief David Moore, and five Rochester police officers, asserting claims under 42 U.S.C. § 1983. Plaintiffs allege that the officers assaulted them, used

excessive force against them, and otherwise violated their rights, in large part because of plaintiffs' actual or perceived sexual orientation.

Defendants have filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND[1]

According to the complaint, the allegations of which I accept as true for purposes of deciding defendants' motion, sometime after midnight on June 1, 2007, three of the plaintiffs–Josh Lieberman, Christine Herrick and Dave Greenlaw, along with several other nonparty individuals–were walking home from a bar on Monroe Avenue in Rochester. As they were passing a house on South Goodman Street, a group of two women and two men on the front porch of the house began verbally harassing plaintiffs and calling them "faggots," "queers," and other homophobic epithets. Second Amended Complaint (Dkt. #21) ¶¶ 22, 23.[2]

Plaintiffs continued walking, but the other four persons began following them. The four then physically attacked plaintiffs with kicks, punches, and blows using a metal pipe. Plaintiffs Alexander Terrance and Megan Barrett arrived at some point, but they too were attacked by the other four individuals. *Id.* ¶ 27.

According to the complaint, plaintiffs eventually left the scene, but, for reasons that are unclear, they returned a short time later, and found that the police had arrived. *Id.* ¶¶ 30, 31.

---

[1] While the Court must evaluate the complaint in this case on its own merits, by way of background, some of the relevant facts concerning the underlying incident have been set forth in this Court's decision in a companion case, *Doe v. Green*, which was brought by the same five plaintiffs against the County of Monroe and several other defendants, arising out of events that occurred following the June 1, 2007 incident. *See* 746 F.Supp.2d 474 (W.D.N.Y. 2010).

[2] For the sake of convenience, the second amended complaint will be referred to simply as the complaint.

Plaintiffs identified their assailants, but the police took no action other than to tell everyone to "go home." *Id.* ¶ 33.

Upset at the officers' perceived passivity, plaintiffs began to demand that they take some action against plaintiffs' alleged attackers. Soon plaintiffs were embroiled in an argument with the officers. The confrontation quickly escalated, and two of the plaintiffs, Terrance and Lieberman, as well as a nonparty individual who was apparently a companion of plaintiffs, ended up being arrested and taken into custody. Plaintiffs allege that the officers used excessive force when making the arrests, and that when plaintiffs Barrett and Greenlaw attempted to intervene, the officers threatened to arrest them as well. Plaintiffs also allege that the officers used anti-gay slurs and were otherwise verbally abusive toward plaintiffs.

Lieberman was taken to the police station, where he was held for a few hours and released. He was charged with three counts of disorderly conduct. Terrance was initially taken to a hospital for treatment of his injuries, and from there he was taken to jail. He was eventually released and charged with "failure to disperse."

Based on these allegations, plaintiffs assert a total of twenty-nine individual causes of action. Each of the five plaintiffs asserts claims under state law for intentional and negligent infliction of emotional harm against defendants Sergeant Shaw, Lieutenant Ward, and Officers Tortora, MacFall, and Yodice (collectively "officers"). Each plaintiff also asserts an equal protection claim against all the defendants, a municipal liability claim under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), and a claim for punitive damages against the officers. In addition, plaintiffs Terrance and Lieberman assert common-law assault and battery claims against Officer Tortora, and against all the officers, respectively. Plaintiffs Terrance and Lieberman also both assert § 1983 claims for excessive force against all the officers.[3]

---

[3] It is not apparent why plaintiff's assault and battery claim is asserted only against Tortora, but his excessive-force claim is asserted against all five officers. *See* Complaint ¶¶ 62, 77.

**DISCUSSION**

**I. Motions for Judgment on the Pleadings:  General Standards**

"In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6).  Under that test, a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).  However, "a plaintiff's obligation ... requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009).

Thus, where a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.  A "plausible" entitlement to relief exists when the allegations in the complaint move the plaintiff's claims across the line separating the "conclusory" from the "factual," and the "factually neutral" from the "factually suggestive." *Id.* at 557 n. 5.  *See also Iqbal*, 129 S.Ct. at 1950 ("only a complaint that states a plausible claim for relief survives a motion to dismiss"); *accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 58-59 (2d Cir.), *cert. denied*, ___ U.S. ___, 131 S.Ct. 824 (2010).

**II. Equal Protection Claims**

The complaint alleges generally that plaintiffs were denied their "right to equal protection on the basis for their actual or perceived sexual orientation and on the basis of their sex ... ."  Complaint ¶ 1.  Each plaintiff also alleges that he or she was discriminated against by defendants "as [a] member[] of an identifiable class and or 'class of one' ... ." Complaint ¶¶ 84, 123, 154, 185, 217.

The specific ways in which defendants are alleged to have committed these violations are by "discriminat[ing] in the enforcement of New York State Law that requires investigation and remedy

of harassment, assault, battery and hate crimes," by "fail[ing] to enforce the laws and rules of the state of New York which pertain to harassment, assault, battery and hate crimes to prevent physical and emotional harm to the plaintiffs," and by "treat[ing] the Plaintiff's complaints of harassment differently from other types of harassment for an extend [sic] period of time, thus failing to protect the Plaintiffs." Complaint ¶¶ 83, 84. Plaintiffs further allege that "defendants failed to conduct investigations of Plaintiffs' complaints, [and] took no action to locate or arrest harassing members of their community ... ." Complaint ¶ 84.

As the Second Circuit has explained, an equal protection claim can be based on an allegation that the plaintiff "was treated differently than other persons who were similarly situated and that such differential treatment was either without rational basis (a 'class of one' claim) or was motivated by an intent to discriminate on an impermissible basis (a selective enforcement claim)." *Casciani v. Nesbitt*, 392 Fed.Appx. 887, 888 (2d Cir. 2010) (citing *Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2004) (describing elements of "class of one" claim), and *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (describing elements of selective enforcement claim), *cert. denied*, ___ U.S. ___, 2011 WL 89175 (Apr. 18, 2011). Plaintiffs' equal protection claims appear to be based on one or both of these theories.

Plaintiffs have not pleaded sufficient facts to proceed under either theory, however. For one thing, plaintiffs have not identified any similarly situated persons who were treated differently from them. While there was another group of people involved in the original altercation, plaintiffs' allegations indicate that the police initially treated both groups alike, by trying to disperse them and telling everyone to "go home." It was precisely because the police did *not* treat the two sets of people differently that plaintiffs became upset and began to argue with the police or to attempt to persuade them to arrest, or otherwise take action against, plaintiffs' alleged attackers.

At that point, however, the two groups of people ceased to be similarly situated. Unlike plaintiffs, the other group–the alleged assailants–are not alleged to have confronted the officers. Thus, the fact that the officers did not arrest any of the members of that other group is of no

significance with respect to plaintiffs' equal protection claim, particularly since it appears from the allegations of the complaint that the officers did not arrive on the scene until after the initial melee between the two groups of people had ended. *See* Complaint ¶¶ 30, 31 (stating that after the initial incident with the other group, plaintiffs "eventually arrived at Plaintiff Greenlaw's apartment," and that they "then returned to the scene to find that the police had arrived"). At the time of Terrance's and Lieberman's arrests, then, plaintiffs were not similarly situated to any other individuals who were treated differently. *See Kamholtz v. Yates County*, 350 Fed.Appx. 589, 591 (2d Cir. 2009) (plaintiff failed to state a claim for selective enforcement where he not only failed to allege any facts showing that he was treated differently than others similarly situated, but "failed to compare his situation to that of anyone else"); *Butler v. City of Batavia*, 323 Fed.Appx. 21, 22 (2d Cir. 2009) ("While plaintiffs allege that sexual orientation motivated the conduct of the municipal defendants, plaintiffs have not pleaded facts sufficient to make this allegation plausible").

Plaintiffs fare no better with their "class of one" claim. "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)); *accord Doninger v. Niehoff*, 527 F.3d 41, 53 (2d Cir. 2008). "Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Clubside*, 468 F.3d at 159 (internal quotation marks omitted). *See, e.g., Ruston*, 610 F.3d at 60 (since plaintiffs failed to allege facts showing that properties sufficiently similar to theirs were treated more favorably by defendants, plaintiffs failed to state a "class of one" equal protection claim).

As stated above, plaintiffs have not identified any similar persons who were treated differently. Again, the other group of people were not situated similarly to plaintiffs, and plaintiffs

- 6 -

have not alleged any facts concerning any other individuals who have been similarly situated to the plaintiffs, but treated differently by the police. Put another way, plaintiffs have not alleged any facts showing that these officers, or Rochester police officers generally, have acted differently when confronted by a situation similar to the incident here. Plaintiffs have therefore failed to plead facts that would support an inference that they were singled out for an improper purpose. *See Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) (stating that level of similarity must be sufficient to support inference that "plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose–whether personal or otherwise–is all but certain"), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008); *Silverstein v. Lawrence Union Free School Dist. No. 15*, No. CV-10-0993, 2011 WL 1261122, at *8 (E.D.N.Y. Feb. 15, 2011) ("The Amended Complaint identifies no similarly situated individuals, let alone comparators with a high degree of similarity, nor can such individuals be inferred. For all these reasons, the Equal Protection claim should be dismissed"), *Report and Recommendation Adopted*, 2011 WL 1261114 (E.D.N.Y. Mar. 30, 2011); *Cassidy v. Scoppetta*, 365 F.Supp.2d 283, 290–91 (E.D.N.Y. 2005) (finding plaintiffs "failed to allege the most fundamental aspect of an equal protection claim" when they did not compare themselves to similarly situated individuals).

Plaintiffs do allege that during their confrontation with the officers, the officers called them various derogatory names, some of which, such as "faggot" and "dyke," apparently referenced plaintiffs' actual or perceived sexual orientation. Complaint ¶¶ 43, 45. While that may indicate some discriminatory intent, it is not in itself indicative of discriminatory enforcement, *i.e.*, that the officers acted as they did because of plaintiff's actual or perceive sexual orientation. *See, e.g.*, *Hill v. City of Southfield*, No. 09-cv-12373, 2010 WL 4822946, at *4 (E.D.Mich. Nov. 22, 2010) ("Although the officers' racial epithets [at the time of his arrest] might assist in establishing a discriminatory purpose, without a showing of discriminatory effect, Hill's selective enforcement claim fails"); *Howard v. Nunley*, No. CV 1-06-191, 2009 WL 799291, at *2-*3 (E.D.Cal. Mar 24,

2009) ("Although Plaintiff claims that Defendant Nunley used a racial epithet, this does not demonstrate that Defendant Nunley discriminated against Plaintiff based on his race. ... Thus, the Court will dismiss Plaintiff's Equal Protection claim"); *Stewart v. Harrah's Illinois Corp.*, No. 98 C 5550, 2000 WL 988193, at *17 (N.D.Ill. July 18, 2000) ("Although Larson's alleged statement, 'nigger, I don't want to put my hands on you,' before conducting the search incident to arrest is undoubtedly offensive, it is insufficient to show that race motivated Stewart's arrest or the charges brought against him"). I see no basis, therefore, for an equal protection claim here.[4]

**III. Excessive-Force Claims**

Plaintiffs Terrance and Lieberman assert claims against the officers for using excessive force during plaintiffs' arrests. Defendants move to dismiss these claims on the ground that plaintiffs have alleged no more than *de minimis* injuries.

The right to make a lawful arrest carries with it the right to use reasonable force to effectuate that arrest. *See Graham v. Connor*, 490 U.S. 386, 396 (1989); *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968); *Penley v. Eslinger*, 605 F.3d 843, 849 (2010). What constitutes a "reasonable" amount of force will vary depending on the circumstances surrounding the arrest. *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010) (citing *Graham*, 490 U.S. at 396); *see also Cox v. Hurd*, No. 07-CV-6044, 2009 WL 539860, at *3 (W.D.N.Y. Mar. 4, 2009) (listing relevant factors).

While a determination of whether the force used was reasonable may sometimes present an issue of fact for the jury, *see, e.g.*, *Tracy v. Freshwater*, 623 F.3d 90, 98-99 (2d Cir. 2010); *Maxwell v. City of New York*, 380 F.3d 106, 109-10 (2d Cir. 2004), courts have also held that "under the Fourth Amendment's reasonableness standard, excessive-force claims generally require at least *de*

---

[4] I note that plaintiffs do not assert claims for false arrest, and it appears from the facts alleged that the officers did have probable cause to arrest plaintiffs. *See Helton v. Dornan*, No. 97 C 0220, 1999 WL 58641, at *9 (N.D.Ill. Jan. 26, 1999) ("Regardless of the officers' offensive remarks, ...there was probable cause to arrest Helton, and he fails to establish that racial animus motivated the officers' actions").

*minimis* physical injury." *Rodriguez v. Passinault*, ___ F.3d ___, 2011 WL 1085662, at *10 (6th Cir. 2011). *See, e.g.*, *Williams v. Sirmons*, 307 Fed. App'x 354, 360–61 (11th Cir.), *cert. denied*, ___ U.S. ___, 130 S.Ct. 395 (2009); *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir.2006); *Lemmo v. McKoy*, No. 08-CV4264, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011) ("the Second Circuit and district courts in the Circuit recognize the concept of 'de minimis' injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed") (citing cases); *Johnson v. Police Officer # 17969*, No. 99-CV-3964, 2000 WL 1877090, at *5 (S.D.N.Y. Dec. 27, 2000) (dismissing excessive-force claim based on admission that plaintiff resisted arrest and only sustained minor injuries), *aff'd*, 19 Fed.Appx. 16 (2d Cir. 2001). *But see Castro v. County of Nassau*, 739 F.Supp.2d 153, 176 (E.D.N.Y. 2010) ("'the Second [C]ircuit has indicated that a very minimal injury is sufficient to trigger potential liability' for excessive force") (quoting *Yang Feng Zhao v. City of New York*, 656 F.Supp.2d 375, 390 (S.D.N.Y. 2009)).

In short, the presence, or degree of injury sustained by the plaintiff is a relevant factor to consider, but it is not necessarily dispositive of whether the plaintiff may seek recovery. The court must examined the totality of the circumstances in determining whether a jury question has been presented. *See Sash v. United States*, 674 F.Supp.2d 531, 539 (S.D.N.Y. 2009) ("Just as reasonable force is not unconstitutional even if it causes serious injury, neither does unreasonable force become immunized from challenge because it causes only minor injury").

In the case at bar, plaintiff Terrance alleges that when he approached defendant MacFall and "asked [him] to prepare a police report" concerning the alleged assault on the plaintiffs by the other group of civilians, MacFall "shov[ed Terrance] in the chest," then "lifted [Terrance] in the air and body slammed him onto the ground." Complaint ¶¶ 38, 39. MacFall then handcuffed Terrance and put him in the back of a police car, where Terrance "fainted from being thrown violently to the ground and from ingesting his own blood." Complaint ¶ 41.[5] When Terrance came to in the police

---

[5]It is not apparent from the complaint where or why plaintiff was bleeding.

car, he allegedly discovered "that the tip of his right toe had been cut off while unconscious in the back of the police car."  Complaint ¶ 42.

Plaintiff Lieberman alleges that when he attempted to verbally intervene in the confrontation between the officers and the other plaintiffs, defendant Tortora "grabbed Lieberman's arm, [and] told him 'that's it ... you're going to jail.'"  Complaint ¶ 46.  The complaint further alleges that "Lieberman was also body slammed to the ground, handcuffed and placed in the back of a City of Rochester police vehicle."  Complaint ¶ 50.

Viewing these allegations in the light most favorable to plaintiffs, I find that plaintiff Terrance has alleged enough facts to proceed with his excessive-force claim against MacFall, but that plaintiff Lieberman's excessive-force claim must be dismissed.  The only force alleged by Lieberman is that he was thrown to the ground and handcuffed.  Considering the volatility of the situation and the fact that there had recently been a scuffle between the two groups of people present, I find that the force used was not excessive, as a matter of law.  *See Williams v. McNesby*, No. 3:05cv264, 2006 WL 2849719, at *5 n.12 (N.D.Fla. Sept. 29, 2006) (allegations that police officer "slammed [plaintiff's] face into the ground," "pulled his arms back so far it felt like they were breaking," and, as plaintiff lay on the ground, pulled up on the handcuff chain with plaintiff's hands cuffed behind him, did not allege excessive force in the course of plaintiff's arrest); *Smith v. Fields*, No. 95 CIV. 8374, 2002 WL 342620, at *5 (S.D.N.Y. Mar. 4, 2002) (allegations that plaintiff was dragged out of his car, thrown to the ground, and threatened at gunpoint did not allege use of excessive force).

Terrance's claim stands on a different footing, however.  He alleges that a part of one of his toes was severed during these events, and that enough force was used to cause him to faint.  He further alleges that he was "ingesting his own blood," and that before being taken to the police

station, he was taken to a hospital for treatment of his injuries. Those allegations suggest that significantly more force was used against Terrance than against Lieberman.[6]

At least at the motion-to-dismiss stage, those allegations are sufficient to allow Terrance's claim against MacFall to go forward. First, while Terrance may not have suffered "serious" injuries, that is not a prerequisite to liability on an excessive-force claim. *See Griffen v. Crippen*, 193 F.3d 89, 92 (2d Cir. 1999) (plaintiff "need not prove "significant injury" to make out an excessive force claim and, thus, the fact that he suffered only minor injuries does not warrant dismissal") (discussing prisoner's excessive-force claim under Eighth Amendment); *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe"); *Vasquez v. Klie*, No. 03 CIV. 3905, 2010 WL 3219300, at *1 (S.D.N.Y. Aug. 11, 2010) ("A plaintiff need not have suffered a serious injury in order to have an actionable excessive force claim").

Second, while plaintiff does not allege how his toe got cut, the allegations of the complaint, if true, indicate that this occurred either during or immediately after his arrest, while he was in custody. Plaintiff's allegation that he was swallowing his own blood also indicates that a significant degree of force may have been used against him. Although plaintiff does not allege that the arrest itself was unlawful, he does not allege any facts indicating that he became violent, that he resisted arrest, or that such force was otherwise reasonable.

Without more, the facts alleged here may not be sufficient for this claim to go to a jury or to survive summary judgment. But despite *Twombly*'s heightened pleading standard, the standard on a motion to dismiss remains less stringent than on a motion for summary judgment. Plaintiff need not plead specific evidence at this stage; he need only plead facts that make his claim plausible. *See*

---

[6]At oral argument on the motion to dismiss, counsel for defendants contended that while both Terrance's and Lieberman's injuries were *de minimis*, "one [was] much less [so] than the other."

*Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010). In my view, Terrance has met that standard.

I also conclude, however, that Terrance may proceed on this claim only against Officer MacFall, in MacFall's individual capacity. The allegations of the complaint indicate that MacFall was the only officer who used force against Terrance, and that it was MacFall who placed Terrance in the back of the police car. Any excessive-force claims against the other officers would be based on nothing but conjecture.[7] As explained in Section IV, *infra*, there is also no basis here for a claim against MacFall in his official capacity, which would effectively be a claim against the City.

All the individual defendants contend that they are entitled to qualified immunity. While my decision here renders it unnecessary for the Court to address that argument with respect to most of plaintiffs' claims, I also conclude that at this stage, MacFall is not entitled to dismissal of this claim on the ground of qualified immunity. At this point, it is unclear what the extent of Terrance's injuries were or exactly how they occurred. Accordingly, MacFall's motion to dismiss on qualified immunity grounds is denied as premature. *See Roman Catholic Diocese of Rockville Centre, New York v. Incorporated Village of Old Westbury*, No. 09-CV-5195, 2011 WL 666252, at *20 (E.D.N.Y. Feb. 14, 2011) ("Because this defense necessarily involves a fact-specific inquiry, it is generally premature to address the defense of qualified immunity in a motion to dismiss") (internal quotation marks omitted).

## IV. Municipal Liability Claims

Each plaintiff asserts a claim against the City based on the rule enunciated in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), which permits a municipality to be held liable under § 1983 if a plaintiff proves that the municipality violated a

---

[7]Inexplicably, the complaint asserts a common law assault and battery claim by Terrance against Officer Tortora only. *See* Complaint ¶¶ 61-67. The complaint's factual allegations say nothing about any force being used by Tortora against Terrance, however.

federally protected right through (1) a municipal policy, (2) a municipal custom or practice, or (3) the decision of a municipal policymaker with final policymaking authority. *See id.* at 694; *see also Zherka v. Difiore*, No. 10-882-CV, 2011 WL 397678, at *3 (2d Cir. 2011).

In this action, plaintiffs allege, in utterly conclusory fashion, that the City had notice of the officers' alleged propensity to engage in improper conduct, that the City ratified the officers' improper conduct, and that the City failed to properly train and supervise the officers. No facts are alleged in support of that assertion.

Such an "allegation is not nearly sufficient to support a *Monell* claim because the complaint as a whole contain[s] no factual assertions whatsoever regarding [City] policy." *Palermo v. Town of North Reading*, 370 Fed.Appx. 128, 130 n.4 (1st Cir.) (citing *Iqbal*, ___ U.S. at ___, 129 S.Ct. at 1949), *cert. denied*, ___ U.S. ___, 131 S.Ct. 280 (2010). *See also Missel v. County of Monroe*, 351 Fed.Appx. 543, 545 (2d Cir. 2009) (agreeing with district court that plaintiff had made no factual allegations that would support a plausible inference that county's "policies" or "customs" caused sheriff's deputy's alleged violations of plaintiff's rights). Plaintiffs' claims against the City must therefore be dismissed.

**V. Claims under State Law**

**A. Supplemental Jurisdiction**

Under 28 U.S.C. § 1367(c)(3), a district court may, but is not required to decline to exercise its supplemental jurisdiction over state-law claims if "the district court has dismissed all claims over which it has original jurisdiction ... ." In practice, where all federal claims are dismissed before trial, courts typically dismiss the state claims as well. *Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir.1998). "Dismissal of the pendent state law claims is not, however, absolutely mandatory even where the federal claims have been dismissed before trial ... ." *Id.* (internal quotation marks omitted). Indeed, the Supreme Court has characterized as "purely discretionary" a district court's decision whether to exercise its supplemental jurisdiction over state-law claims, after dismissing all

the claims over which the court has original jurisdiction. *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, ___ U.S. ___, 129 S.Ct. 1862, 1866 (2009) (citing 28 U.S.C. § 1367(c)). *See also Osborn v. Haley*, 549 U.S. 225, 245 (2007) ("Even if only state-law claims remained after resolution of the federal question, the District Court would have discretion, consistent with Article III, to retain jurisdiction").

In deciding whether to exercise its supplemental jurisdiction under § 1367(c)(3), a district court must "balance[] the traditional 'values of judicial economy, convenience, fairness, and comity' ... ." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[N]o single factor is dispositive," and the decision whether to retain jurisdiction over the state-law claims must be made "in light of the specific circumstances of the case at bar." *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 602 (5th Cir.), *cert. denied*, ___ U.S. ___, 129 S.Ct. 2865 (2009).

In the case at bar, only one federal claim, by one plaintiff, remains: plaintiff Terrance's Fourth Amendment excessive-force claim. Although the other plaintiffs have no remaining federal claims, Terrance's claims for intentional and negligent infliction of emotional harm, and for punitive damages, are shared by the other plaintiffs. In addition, both Terrance and Lieberman assert claims under state law for assault and battery.

Under these circumstances, I believe that the interests of judicial economy, and the interests of the parties themselves, would best be served by the Court's exercise of jurisdiction over all the plaintiffs' claims under state law. The issues surrounding Terrance's state law claims and those of the other plaintiffs largely overlap, and it would be more efficient for this Court to deal with them now, all at once, than to address Terrance's claims here and have the other plaintiffs' state law claims possibly litigated in state court.

**B. Intentional Infliction of Emotional Harm**

Each of the five plaintiffs asserts claims under New York law for intentional and negligent infliction of emotional harm against the officers. Each plaintiff's allegations in support of these

claims states, in boilerplate fashion, that the officers' "acts represented extreme and outrageous conduct which intentionally or recklessly caused severe emotional distress to Plaintiff ... ." *See, e.g.*, Complaint ¶¶ 69, 176.  Each plaintiff also alleges that defendants breached their duties as police officers "by causing Plaintiff ... to reasonably believe that his [or her] physical safety was in danger and caused plaintiff to fear for his [or her] own safety." Complaint ¶¶ 74, 181.

Intentional infliction of emotional distress is "an extremely disfavored cause of action under New York law that is routinely dismissed on pre-answer motion." *Schaer v. City of New York*, No. 09 Civ. 7441, 2011 WL 1239836, at *7 n.4 (S.D.N.Y. Mar. 25, 2011).  *See Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (1993) (noting that every intentional infliction of emotional distress claim considered by the New York Court of Appeals had failed because the conduct was not sufficiently outrageous).  "[T]herefore, the burden to establish extreme and outrageous conduct is extremely high." *Armatas v. Maroulleti*, No. 08-CV-310, 2010 WL 4340437, at *19 (E.D.N.Y. Oct. 19, 2010) (finding that plaintiff who alleged that his arrest caused him "great distress [and] suffering" "ha[d] not alleged conduct sufficiently outrageous to meet this high burden").  *See also McGown v. City of New York*, No. 09 CIV 8646, 2010 WL 3911458, at *5 (S.D.N.Y. Sept. 9, 2010) (noting that "[t]his highly disfavored cause of action is almost never successful").

In order to prevail on a claim of intentional infliction of emotional distress, a plaintiff must demonstrate conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (quoting *Howell*, 81 N.Y.2d at 122). Plaintiffs have not alleged such conduct here.  Even were there some merit to plaintiffs' other claims, the conduct alleged here falls far short of the kind of outrageousness necessary to sustain this cause of action.

**C. Negligent Infliction of Emotional Harm**

"Under New York law, a plaintiff may establish [a claim for negligent infliction of emotional harm] in one of two ways: (1) the 'bystander' theory; or (2) the 'direct duty theory.'" *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000) (quoting *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996)). "Under the 'bystander' theory, plaintiff must allege that she witnessed the death or serious bodily injury of a member of her immediate family." *Leibenguth v. United States*, No. 08-CV-6008, 2009 WL 3165846, at *4 (W.D.N.Y. Sept. 29, 2009) (citing *Mortise*, 102 F.3d 693). "Under the 'direct duty' theory, a plaintiff suffers emotional distress caused by 'defendant's breach of a duty which unreasonably endangered [plaintiff's] own physical safety.'" *Baker*, 239 F.3d at 421 (quoting *Mortise*, 102 F.3d at 696).

The "bystander" theory is "obviously inapplicable" here. *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000). As to the "direct duty" theory, the duty in question "must be specific to the plaintiff, and not some amorphous, free-floating duty to society." *Dzwonczyk v. Syracuse City Police Dep't*, 710 F.Supp.2d 248, 272 (N.D.N.Y. 2008). "This duty 'is far more specific than the more generalized duty to avoid negligently injuring another.'" *Entelisano v. Electrolux Home Products, Inc.*, No. 6:10-CV-1074, 2011 WL 572434, at *3 (N.D.N.Y. Feb. 15, 2011) (quoting *Druschke v. Banana Republic, Inc.*, 359 F.Supp.2d 308, 315 (S.D.N.Y. 2005)). *See, e.g.*, *Hazan v. City of New York*, No. 98 Civ. 1716, 1999 WL 493352, at *5 (S.D.N.Y. July 12, 1999) ("Although the City [of New York] has a general duty to prevent its police force from inflicting unreasonable harm on society at large, this duty was not a special one owed specifically to the plaintiff") (internal citations omitted).

In the case at bar, plaintiffs have not alleged any special duty owed to them by the officers, aside from police officers' general duty to the public not to use excessive force when making an arrest. Accordingly, there is no basis here for a claim of negligent infliction of emotional harm. *See Entelisano*, 2011 WL 572434, at *3.

**D. Assault and Battery**

Plaintiffs Terrance and Lieberman assert common-law assault and battery claims against Officer Tortora, and against all the officers, respectively. Lieberman's assault and battery claim fails for the same reason as his Fourth Amendment excessive-force claim. The complaint simply does not allege facts to support such a claim. *See James Biggs v. City of New York*, No. 08 Civ. 8123, 2010 WL 4628360, at *8 (S.D.N.Y. Nov. 16, 2010) (same standard is used to evaluate claims of assault and battery under New York law and of excessive force under the Fourth Amendment) (citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996), and *Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir. 1991)); *Johnson v. City of New York*, No. 05 CIV. 7519, 2008 WL 4450270, at *12 (S.D.N.Y. Sept. 29, 2008) ("Plaintiff's state law assault and battery claims effectively duplicate his constitutional excessive force claims, and are disposed of in the same manner. The essential elements of the claims are the same"); N.Y. Penal L. § 35.30(1) ("A police officer ..., in the course of effecting or attempting to effect an arrest ... of a person whom he or she reasonably believes to have committed an offense, may use physical force when and to the extent he or she reasonably believes such to be necessary to effect the arrest").

As noted above, *see* n.7, *supra*, the factual allegations of the complaint do not support such a claim by Terrance against Tortora, since plaintiff does not allege that Tortora even touched him. In addition, even if this claim had been asserted against MacFall, who arrested Terrance, it would simply be duplicative of Terrance's Fourth Amendment claim. *See, e.g.*, *Cosby v. City of White Plains, New York*, No. 04 CIV. 5829, 2007 WL 853203, at *6 (S.D.N.Y. Feb. 9, 2007 ("Plaintiff's state law claims for assault and battery essentially duplicate his constitutional excessive force claims"); *see also Jones v. City of Minneapolis*, 337 Fed.Appx. 596, 598 n.4 (8th Cir. 2009) (noting that "[a]t trial the excessive force claim and assault and battery claims were merged and tried as an excessive force claim"). These claims are therefore dismissed.

**VI. Punitive Damages**

Each plaintiff asserts a claim for punitive damages against the officers, both in their individual and official capacities. Although these claims are set out in the complaint as separate causes of action, there is no independent cause of action under federal or New York law for punitive damages. *See Gilman v. BHC Securities, Inc.*, 104 F.3d 1418, 1431 (2d Cir. 1997). Punitive damages are simply one type of relief that may be sought in connection with a particular substantive claim. Thus, at this point only plaintiff Terrance could seek punitive damages, on his excessive-force claim against MacFall.

"A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 536 (1999) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). *Accord New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 121 (2d Cir. 2006).

Since Terrance may proceed on his claim of excessive force against MacFall, I also conclude that it would be premature at this point to dismiss his request for punitive damages on that claim. Whether Terrance ultimately is entitled to an award of punitive damages is intertwined with the issue of liability on that claim, and is dependent on a determination of the same factual issues. *See Robinson v. District of Columbia*, 736 F.Supp.2d 254, 265 (D.D.C. 2010) (denying without prejudice defendants' motion to dismiss plaintiff's punitive damages claim); *Davis v. Zavaras*, No. 09-cv-00266, 2010 WL 625043, at *10 (D.Colo. Feb. 19, 2010) (same); *Stilton v. East Jersey State Prison*, No. CIV. A. 07-3702, 2009 WL 3231219, at *8-*9 (D.N.J. Sept. 29, 2009) (same). Like his substantive § 1983 claim, however, Terrance's claim for punitive damages may only be asserted against MacFall in his individual capacity. *See Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 262 (2d Cir. 1997) (municipal officers sued in their official capacities are immune from punitive damages) (citing *Brandon v. Holt*, 469 U.S. 464, 471-73 (1985)).

**CONCLUSION**

Defendants' motion for judgment on the pleadings (Dkt. #39) is granted in part and denied in part. All of plaintiffs' claims, other than plaintiff Alexander Terrance's excessive-force claim against defendant MacFall under 42 U.S.C. § 1983 (including his request for punitive damages on that claim), are dismissed. In all other respects, defendants' motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
April 29, 2011.